**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LINN FARMS AND TIMBER                                                                              PLAINTIFF
LIMITED PARTNERSHIP

v.                                                 No. 4:09CV00663 JLH

UNION PACIFIC RAILROAD COMPANY[1] and
CHESAPEAKE EXPLORATION, LLC,
successor by merger to Chesapeake
Exploration Limited Partnership                                                                    DEFENDANTS

**OPINION AND ORDER**

Linn Farms and Timber Limited Partnership ("Linn Farms") seeks to quiet title to mineral rights that it acquired through tax deeds. It also seeks damages from the defendants for intentionally clouding its title in violation of Ark. Code Ann. § 5-37-226(a), by filing a Memorandum of Oil and Gas Lease when Union Pacific Railroad Company leased rights to oil and gas to Chesapeake Exploration, LLC, which filed the memorandum of lease. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Linn Farms, Union Pacific, and Chesapeake have each filed separate motions for summary judgment. For the following reasons, the motion for summary judgment filed by Linn Farms is denied. The motions for summary judgment filed by Union Pacific and Chesapeake are granted.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

---

[1] The complaint named "Union Pacific Corporation" as a defendant, but that was a misnomer. Union Pacific has answered and stated that its name is Union Pacific Railroad Company. The Clerk is directed to correct the docket to show the defendant as Union Pacific Railroad Company.

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

The parties to this action dispute who owns mineral rights on three parcels of land in Van Buren County, Arkansas, described as: (1) N/2 SW of Section 35, Township 09, Range 13 (80 acres); (2) SW SW of Section 35, Township 09, Range 13 (40 acres); and (3) SE SW of Section 35, Township 09, Range 13 (40 acres). Danny and Linda Linn are the surface owners of those three parcels. Missouri Pacific Railroad Corporation, which had its headquarters in Fort Worth, Texas, owned the mineral rights on the three parcels. Sometime before the period of time relevant to this case, Missouri Pacific merged with Union Pacific, which has its headquarters in Omaha, Nebraska. Union Pacific failed to inform the Van Buren County Assessor's Office that the mailing address of the owner of these parcels had changed. The property taxes went unpaid, so on June 26, 2003, the Van Buren County Tax Collector certified that Missouri Pacific's mineral rights were forfeited to the State for nonpayment of taxes.

On October 19, 2005, the Arkansas Commissioner of State Lands, Mark Wilcox, sent a letter stating that Missouri Pacific's mineral rights had been certified to the State due to the tax delinquency, that the surface owner of the three parcels intended to purchase the mineral rights, and that Missouri Pacific had until November 22, 2005, to return those rights.[2] Because Missouri Pacific remained the record owner of the mineral rights, the letter was addressed to Missouri Pacific and mailed to "PO Box M/S 2903, Fort Worth, TX 76101." The Fort Worth address was the last known address on file with the Van Buren County Assessor, and the County Assessor provided that mailing address to the Commissioner of State Lands for purposes of sending notice relating to the mineral rights. The letter was sent by certified mail but was returned and stamped "Not Deliverable As Addressed—Unable To Forward."

Union Pacific did not redeem the mineral rights. Linn Farms, an entity owned by the Linns, made three payments to the Commissioner in the amounts of $57.88, $51.44, and $51.44 to satisfy the delinquent tax obligation on those three parcels. The Commissioner then issued deeds to convey ownership of the mineral rights on the three parcels to Danny and Linda Linn. The deeds were filed for record in Van Buren County on December 5, 2005. Because the grantee should have been

---

[2] Pursuant to Ark. Code Ann. § 26-37-314, title to severed mineral interests vests in the State of Arkansas, in the care of the Commissioner of State Lands, when the mineral interests are forfeited to the State and conveyed by certification to the Commissioner for nonpayment of property taxes. The Commissioner must notify the owner of record by certified mail at the owner's last known address. The statute further provides that after expiration of the redemption period, the Commissioner shall sell the tax-delinquent mineral interests to the surface owners if they opt to purchase the interests.

Linn Farms, on June 18, 2009, the Commissioner issued corrected limited warranty deeds for the mineral rights to Linn Farms.[3]

On April 9, 2008, Chesapeake filed a Memorandum of Oil and Gas Lease for record in Van Buren County. According to the memorandum, on February 25, 2008, Union Pacific executed in favor of Chesapeake an oil and gas lease on the following described property: Section 35, Township 9 North, Range 13 West, SW/4, N/2 SE/4, SE/4 NE/4.

### III.

Each party has moved for summary judgment and, in so doing, has responded to the opposing party's respective motion, with Chesapeake largely adopting Union Pacific's arguments. The parties dispute whether the Commissioner's effort to give notice to Missouri Pacific complied with the due process requirements as explained by the Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006). The parties also dispute whether Union Pacific's claim to the mineral rights is barred by an applicable statute of limitations. Chesapeake also contends that even if Union Pacific is no longer the true and correct owner of the mineral rights, filing the memorandum of lease did not violate section 5-37-226.

**A.    NOTICE AND DUE PROCESS REQUIREMENTS**

Before the government may deprive a person of property, the Due Process Clause of the Fourteenth Amendment requires that such adjudication "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656-57, 94 L. Ed. 865 (1950). Although due process does not require

---

[3] Linn Farms asserts that the effectiveness of those deeds dates back to the filing of the deeds on December 5, 2005. Neither Union Pacific nor Chesapeake has argued to the contrary.

actual notice, *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S. Ct. 694, 701, 151 L. Ed. 2d 597 (2002), it does require "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S. Ct. at 657. The "notice required will vary with circumstances and conditions." *Walker v. City of Hutchinson, Kansas*, 352 U.S. 112, 115, 77 S. Ct. 200, 202, 1 L. Ed. 2d 178 (1956).

In *Flowers*, the Supreme Court considered whether the government's knowledge of its failed attempts at notice is a "circumstance and condition" that varies the "notice required." *Flowers*, 547 U.S. at 227, 126 S. Ct. at 1714. Specifically, the issue was whether, when notice of a tax sale is sent to the owner by certified mail and returned "unclaimed," the State must take additional reasonable steps to provide notice prior to the taking, if practicable to do so. *Id.* at 223, 225, 126 S. Ct. at 1712, 1713.[4]

The facts in *Flowers* were relatively simple. Jones owned a house in Little Rock, Arkansas. He eventually separated from his wife and moved into an apartment. His wife remained in residence at the house. The property taxes went unpaid after he satisfied the mortgage in 1997, so the property was certified as delinquent. In 2000, the Arkansas Commissioner of State Lands sent to Jones's house a notice indicating that the property tax was delinquent, and the property would be sold unless redeemed. The notice was sent by certified mail, and it was returned marked "unclaimed." Two years later, the Commissioner published in the Arkansas Democrat-Gazette a notice of public sale.

---

[4] For a discussion of the Supreme Court's decision as well as the historical development of due process notice requirements related to tax foreclosure procedures, see Jenny Wilkes Robertson, *It Felt So Right But Was All So Wrong: United States Supreme Court Rules Arkansas's Tax-Foreclosure Notice Procedure Fails to Satisfy Due Process Clause When Certified Mail Notice Returns "Unclaimed."* 30 U. Ark. Little Rock L. Rev. 179 (2007).


Flowers submitted an offer. The Commissioner then sent another notice to Jones's house, again by certified mail, to inform him that the house would be sold to Flowers unless he paid his taxes. Again, the certified letter was returned "unclaimed." Flowers purchased the house and delivered an unlawful detainer notice, which was served on Jones's daughter. Jones's daughter contacted Jones, who then filed suit. *Flowers*, 547 U.S. at 223-25, 126 S. Ct. at 1712-13.

In holding that the Commissioner should have taken additional reasonable steps, the Supreme Court reasoned as follows:

> We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.
>
> By the same token, when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so. This is especially true when, as here, the subject matter of the letter concerns such an important and irreversible prospect as the loss of a house. Although the State may have made a reasonable calculation of how to reach Jones, it had good reason to suspect when the notice was returned that Jones was no better off than if the notice had never been sent. Deciding to take no further action is not what someone "desirous of actually informing" Jones would do; such a person would take further reasonable steps if any were available.

*Flowers*, 547 U.S. at 229-30, 126 S. Ct. at 1716 (internal citations and quotes omitted). The Supreme Court further held that Jones's failure to comply with his statutory obligation to update his mailing address for notice purposes did not relieve the Commissioner from his obligation to provide constitutionally sufficient notice. *Id.* at 232, 126 S. Ct. at 1717.

Although the Supreme Court stated that it could not prescribe the form of service that the government should adopt, citing *Greene v. Lindsey*, 456 U.S. 444, 455 n.9, 102 S. Ct. 1874, 1880, 72 L. Ed. 2d 249 (1982), it did suggest several reasonable measures that would have been practical for the State to pursue. *Flowers*, 547 U.S. at 234, 126 S. Ct. at 1718. In addition to sending the form by certified mail, the Commissioner could have sent it by regular mail, which would have ensured its delivery without needing a signature. The Commissioner could have addressed the mail to "occupant," which would have ensured notice being given to whomever was occupying the house at the time. The Commissioner also could have posted the notice on the front door. *Id.* at 234-35, 126 S. Ct. at 1718-19. The Supreme Court did not think that the Commissioner was required to search the phonebook or other government records such as income tax rolls for Jones's new address, as those steps could result in an open-ended search imposing unnecessary burdens on the State. *Id.* at 235-36, 126 S. Ct. at 1719.

Linn Farms argues that *Flowers* is not on point. Linn Farms says that the return mark of "unclaimed" in *Flowers* merely indicated that no one was present or willing to sign for the certified mail. In that situation, the Commissioner was required to take additional reasonable steps because he had no way of knowing that Jones no longer resided at that house. However, Linn Farms says that the return mark of "Not Deliverable As Addressed—Unable To Forward" indicated that the Union Pacific address on record with Van Buren County was incorrect. According to Linn Farms, requiring the Commissioner to conduct an open-ended search of the phone book or other government records to discover Union Pacific's proper mailing address is the kind of extraordinary and unreasonable step that the Supreme Court specifically refused to require in *Flowers*.

Linn Farms' argument would carry the day but for one fact: the Commissioner did not need to conduct an open-ended search—he only needed to inquire in his own office. It is undisputed that as early as 2003 the Commissioner issued redemption deeds to Missouri Pacific and mailed them to Missouri Pacific at Union Pacific's address in Omaha, Nebraska. When the notices at issue here were returned as "Not Deliverable As Addressed—Unable To Forward," Jerry Bradshaw—whose job included providing the notice required by statute to owners of mineral rights certified as tax delinquent to the Commissioner by the county tax collectors—asked some landmen if they had a good address for the railroad in Fort Worth. He testified in his deposition that he did not know how to search the Commissioner's electronic records to see whether the Commissioner's records included another address for Missouri Pacific, and he said that he had done all he knew to do when he asked landmen he knew if they had a better address. He did not, however, ask other employees of the Commissioner if they had a correct address for Missouri Pacific.

Requiring the Commissioner to conduct an open-ended search of other government records, the phone book, or other records would impose a significant burden not encompassed by the holding in *Flowers*; but inquiring whether employees of the Commissioner's office had a correct address for Missouri Pacific is just as reasonable and practical as the kinds of additional steps the Court in *Flowers* said should have been taken.

An employee (or employees) in the Commissioner's office sent redemption deeds to Missouri Pacific at the Omaha address. Even thought that employee was in a different department and in a different physical location from Bradshaw, making an internal inquiry still would have been reasonable and practical—it is what a person who actually desired to inform a mineral rights owner of an impending tax sale would do. A simple inquiry addressed to co-workers would have revealed

that the Omaha address was the correct one. Because the Commissioner knew that the taxpayer could not receive notice of the Fort Worth address, and because the additional reasonable and practical step of making an inquiry within the Commissioner's office would have revealed the proper address to which notices should be sent, the Commissioner's effort to provide notice to the railroad of the impending tax sale was insufficient to satisfy due process.

**B.    STATUTES OF LIMITATIONS**

Having determined that the notice of the tax sale was constitutionally insufficient, the next issue is whether the sale to Linn Farms should be set aside. Whether to set aside the sale hinges on the application of the relevant statutes of limitations.

Linn Farms argues that, even if the notice was constitutionally insufficient, Union Pacific's claim to the mineral rights is barred by both the one-year limitations period in Ark. Code Ann. § 26-37-203 and the two-year limitations period in Ark. Code Ann. § 18-60-212.

**1.    One-year limitations period—Ark. Code Ann. § 26-37-203**

Pursuant to Ark. Code Ann. § 26-37-203(a), if tax-delinquent land is not redeemed by the owner within thirty days of notice, the Commissioner of State Lands must issue a limited warranty deed to the land. Subsection (b)(1) then provides that "[a]ll actions to contest the validity of the conveyance shall be brought within one (1) year[5] after the date of the conveyance or thereafter be barred."[6]

---

[5] In 2007, the limitations period under section 26-37-203 was amended from two (2) years to one (1) year.

[6] Section 26-37-204 provides for the setting aside of tax sales. Subsection (d) was added in 2007, presumably in response to the *Flowers* decision, and provides as follows:

If the Commissioner of State Lands determines that the owner and all interested

Citing Ark. Code Ann. § 14-15-404, Linn Farms says that Union Pacific had constructive notice of its purchase of the mineral rights as of December 5, 2005, the date on which the deeds were recorded, so the period of limitations provided in section 26-37-203 began to run that day.

Ark. Code Ann. § 14-15-404 provides:

(a) Every deed . . . affecting the title, in law or equity, to any real . . . property within this state which is or may be required by law to be acknowledged or proved and recorded shall be constructive notice to all persons from the time the instrument is filed for record in the office of the county recorder of the proper county.

* * *

(b) No deed . . . shall be good or valid against a subsequent purchaser of the real estate for a valuable consideration without actual notice thereof or against any creditor of the person executing such an instrument . . . unless the deed . . . is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

Section 14-15-404 provides that subsequent purchasers of real estate are put on constructive notice of a properly recorded deed. *See Bill's Printing, Inc. v. Carder*, 357 Ark. 242, 257, 161 S.W.3d 803, 813 (2004) (Brown, J., dissenting) (section 14-15-404(a) makes provisions for "constructive notice to would-be purchasers of all recorded deeds"). That section does not govern the running of the statute of limitations as to Union Pacific because it was not a subsequent purchaser of the mineral rights.

---

parties did not receive the required notice of sale and right to redeem, the Commissioner of State Lands shall:
    (1) Set aside the sale; or
    (2) Notify the owner and interested parties of the reasons why the
Commissioner of State Lands does not believe the sale should be set aside.

Ark. Code Ann. § 26-37-204(d). There is no evidence in the record showing that Union Pacific informed the Commissioner that it did not receive the required notice of sale and right to redeem. Thus, the Commissioner apparently did not have the opportunity in this case to set aside the sale or explain why he believes the sale should not be set aside.

"The statute of limitations set out in Ark. Code Ann. § 26-37-203 begins to run only after the Commissioner of State Lands gives the statutory notice to owners and interested parties." *Arlands, LLC v. Farmers Bank & Trust Co.*, 2009 WL 3762851, at n.1, 2009 Ark. App. 747 (2009) (where Commissioner failed to give notice of right to redeem tax-delinquent property, the action to set aside the tax deed was not barred by the statute of limitations). The statute, as noted, requires challenges to the tax sale to be brought within one year of the conveyance. As *Arlands* seems to say, imposition of that period of limitations presupposes adequate notice to the landowner. Due process requires notice reasonably calculated under all of the circumstances to inform the property owner of the taking so that he may object. If that notice is lacking, the passage of one year from the taking, without more, would not satisfy the requirements of due process.

  **2.**  **Two-year limitations period—Ark. Code Ann. § 18-60-212**

Linn Farms argues that Ark. Code Ann. § 18-60-212(a) provides an alternative statute of limitations. That statute provides:

> No action for the recovery of any lands or for the possession thereof against any person, or his or her heirs or assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector or Commissioner of State Lands, for the nonpayment of taxes, or who may have purchased them from the state by virtue of any act providing for the sale of lands forfeited to the state or the nonpayment of taxes . . . shall be maintained unless it appears that the plaintiff . . . [was] seized or possessed of the lands in question within two (2) years next before the commencement of the action.

Although the tax sale to Linn Farms was invalid because of the lack of notice, the insufficient notice does not prevent the tax deeds to Linn Farms from constituting color of title. *See Skelly Oil Co. v. Johnson*, 209 Ark. 1107, 1131-32, 194 S.W.2d at 436-37 (1946) ("[T]he invalidity of the [tax] sale does not prevent the tax deed from being color of title . . . . We have repeatedly held that a deed, based on a void tax sale, but on the face of the deed describing the land, and purporting to convey

11

it, is color of title within the two-year, as well as the seven-year statute of limitation.") (citing cases); *Bradbury v. Dumond*, 80 Ark. 82, 96 S.W. 390 (1906) (same). "A void mineral tax deed can be sufficient color of title for the purpose of determining title by adverse possession." *Hurst v. Rice*, 278 Ark. 94, 99, 643 S.W.2d 563, 565 (1982). The limited warranty deeds to Linn Farms, although invalid because of the constitutionally insufficient notice to Union Pacific, still constituted color of title for purposes of the two-year limitations period in section 18-60-212(a).

Color of title alone, however, is not sufficient to set in motion the statute of limitations. A purchaser with color of title must also take possession. *Honeycutt v. Sherrill*, 207 Ark. 206, 179 S.W.2d 693, 695 (1944) ("[A]ctual, adverse possession under a tax deed from the State Land Commissioner . . . vests good title in the occupying holder of the donation certificate or deed, regardless of any defect in the tax sale under which the state acquired title.") (citing cases). For purposes of the statute of limitations, a person takes possession of minerals by opening and operating a mine or drilling for and producing oil and gas. *Garvan v. Potlatch Corp.*, 278 Ark. 414, 417, 645 S.W.2d 957, 959 (1983); *Adams v. Bruder*, 275 Ark. 19, 22, 627 S.W.2d 12, 13 (1982); *Claybrooke v. Barnes*, 180 Ark. 678, 682, 22 S.W.2d 390, 392 (1929). *See also Davis v. Stonecipher*, 218 Ark. 962, 964, 239 S.W.2d 756, 757 (1951) (where minerals "were non-producing, it follows that there was no possession of the minerals by anyone within the purview" of the two-year limitations period); *Skelly Oil Co.*, 209 Ark. at 1121-22, 194 S.W.2d at 432; *Walker v. Western Gas Co.*, 5 Ark. App. 226, 228, 635 S.W.2d 1, 2 (1982) ("To be in possession of constructively severed minerals, actual production is required. The only way the statute of limitations will run against the owner of the mineral rights is for the owner of the surface rights or some other person to take actual possession of the minerals by opening mines and operating same.") (internal citations omitted). Sporadic use

is not sufficient to start the running of the statute of limitations. *Hurst*, 278 Ark. at 99, 643 S.W.2d at 565-66 (holding that limited use of minerals was insufficient to put predecessors in title on notice of adverse possession, and producing on gas and oil did not also constitute adverse possession of coal).

Here, no claim is made that Linn Farms opened and operated a mine on the lands or drilled for and produced oil or gas. Therefore, the two-year statute of limitations in Ark. Code Ann. § 18-60-212 did not run against Union Pacific.

**C.    CLOUDING OF TITLE**

Chesapeake argues that it did not cloud Linn Farms' title when it recorded the Memorandum of Oil and Gas Lease. Chesapeake says that Linn Farms has failed to show that Chesapeake's actions were sufficient to create liability under Ark. Code Ann. § 5-37-226.

Because the tax deed to Linn Farms is invalid, the Memorandum of Oil and Gas Lease to Chesapeake did not cloud Linn Farms' title. Chesapeake's motion for summary judgment is therefore granted.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment filed by Linn Farms is DENIED. Document #13. The motions for summary judgment by Union Pacific and Chesapeake are GRANTED. Documents #33 and #39.

IT IS SO ORDERED this 25th day of May, 2010.

*/s/ J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE